IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:22-17-2 |
| | ) Judge Stephanie L. Haines |
| MANDI LITZINGER | ) |

**MEMORANDUM OPINION**

Mandi Litzinger ("Defendant") stands charged with distribution of fentanyl resulting in serious bodily injury and death, and conspiracy to distribute and to possess with intent to distribute fentanyl. On August 15, 2024, the Government filed a notice of appeal [Doc. 84] from an order releasing Defendant to inpatient drug treatment [Doc. 83] entered by United States Magistrate Judge Keith A. Pesto. This Court stayed the release order [Doc. 85] pending a de novo detention hearing, which was held on August 26, 2024. Upon consideration of the testimony and evidence elicited at the de novo detention hearing, and upon review of the transcripts of proceedings before Judge Pesto [Govt. Ex. 1 and 2], the Pretrial Services Report, and the record as a whole, the Court granted the Government's appeal, reversed and vacated Judge Pesto's release order, and ordered that Defendant be detained pending trial [Doc. 95]. This memorandum opinion setting forth the Court's reasoning now follows.

I.   **Procedural Background**

On October 11, 2022, a grand jury returned a one-count indictment against James Gill charging him with distribution of fentanyl resulting in serious bodily injury and death [Doc. 3]. Following arraignment, Judge Pesto entered an order directing that Gill be released to an inpatient substance abuse treatment facility [Doc. 18]. Upon Gill's successful completion of the treatment

program, Judge Pesto held a detention hearing on May 19, 2023. After the hearing, Judge Pesto entered an order setting conditions of release [Doc. 31]. The Government did not appeal from that release order, and Gill remains free on bond.

On July 9, 2024 a grand jury returned a two-count superseding indictment charging both Gill and Litzinger at Count One with distribution of fentanyl resulting in serious bodily injury and death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and charging Litzinger alone at Count Two with conspiracy to distribute and to possess with intent to distribute fentanyl, in violation of 21 U.S.C. § 846 [Doc. 52].

A warrant for Litzinger's arrest was issued and the Government filed a request for detention [Doc. 57]. Upon her arrest, Litzinger appeared before Judge Pesto on July 11, 2024 for an initial appearance and arraignment, and a detention hearing was set for July 17, 2024. On the day of the hearing, Litzinger filed a motion for pretrial release with conditions [Doc. 72]. At the hearing, Judge Pesto found that Litzinger had rebutted the presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community arising under 18 U.S.C. § 3142(e)(3), but nevertheless concluded that she is a danger to the community, although not a risk of flight [Govt. Ex. 1 p. 28]. He followed with an order directing Pretrial Services to seek an evaluation of Litzinger by the Cambria County Drug and Alcohol Commission, and ordering Litzinger detained pending completion of that evaluation [Doc. 74].

On August 15, 2024, Judge Pesto held a telephone status conference with the Assistant United States Attorney and defense counsel and advised them that a bed date of August 16, 2024 had become available at Pyramid-Lehigh Valley for inpatient drug treatment, and that he intended to release Litzinger to the inpatient drug treatment program. Following the status conference,

2

Judge Pesto entered an order [Doc. 83] adopting the text from his prior order releasing Gill to an inpatient drug treatment facility [Doc. 18]. The Government filed a notice of appeal seeking revocation of the release order [Doc. 84], and the release order was stayed pending a de novo detention hearing before this Court [Doc. 85].

A de novo detention hearing was held on August 26, 2024. At the hearing, this Court admitted without objection the transcript of the detention hearing held before Judge Pesto on July 17, 2024 [Govt. Ex. 1] and the transcript of the telephone status conference Judge Pesto held on August 15, 2024 [Govt. Ex. 2], as well as a chemical analysis report of the substances seized from Litzinger's bedroom upon her arrest for the current offenses [Govt. Ex. 3]. In addition, the Government presented the testimony of Richard Kadlecik, the Task Force officer who participated in Litzinger's arrest. At the conclusion of the hearing, this Court granted the Government's appeal, reversed and vacated Judge Pesto's release order, and ordered that Litzinger be detained pending trail. A written order of detention then was entered [Doc. 95], for the following reasons.

## II.  Legal Standards

### A.   Release or Detention Pending Trial

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, governs release and detention determinations pending ongoing judicial proceedings. Pursuant to §3142(b) of the Act, a defendant must be released on her personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be ordered. 18 U.S.C. § 3142(e).

Certain cases raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies, among others, to cases in which there is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 924(c) or an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3). An indictment charging a defendant with committing an offense enumerated in § 3142(e)(3) is sufficient to establish probable cause triggering the rebuttable presumption. *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

Here, Defendant is charged with distribution of fentanyl resulting in death (Count One), and with conspiracy to distribute and to possess with intent to distribute a quantity of fentanyl (Count Two). As to Count One, distribution of fentanyl generally carries a penalty of not more than 20 years, but if death or serious bodily injury results, a sentence of not less than twenty years or more than life is mandatory. Moreover, if the defendant has at least one final prior felony drug conviction, a term of imprisonment of not more than 30 years is mandatory, or life imprisonment if death or serious bodily injury results. *See* 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). As to Count Two, conspiracy to distribute and to possess with intent to distribute a quantity of fentanyl carries a penalty not more than twenty years in prison, or not more than 30 years if the defendant has a final prior conviction for a felony drug offense. *See* 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) & 846. Accordingly, because both of the offenses charged in the superseding indictment are punishable by a maximum term of imprisonment of ten years or more, both charges trigger the rebuttable presumption that no condition or combination of conditions will reasonably assure Defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(e)(3).

A defendant may rebut the presumption in § 3142(e) by producing "some credible evidence . . . that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The defendant's burden of production is relatively light. *United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994) (citation omitted). If a defendant rebuts the presumption, the burden of persuasion remains with the government. *Id*. Thus, the government bears the ultimate burden of proving that a defendant presents either a risk of flight or a danger to the community.

The Government must prove by a preponderance of the evidence that a defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Government must prove by clear and convincing evidence that a defendant is a danger to the safety of any other person or the community. *United States v. Delker*, 757 F.2d 1390, 1399 (3d Cir. 1985).

**B.     Review of a Release or Detention Order**

Pursuant to 18 U.S.C. § 3145(a)(1), "[i]f a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release. . . ."

In reviewing a release order entered by a magistrate judge, the district court is to exercise *de novo* review. *See Delker,* 757 F.2d at 1394; *Chagra,* 850 F. Supp. at 356; *United States v. Miftakhov,* No. 3:14-MJ-8, 2014 WL 808818, at *1 (W.D. Pa. Feb. 28, 2014). "The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded

record." *United States v. Bastianelli*, Crim. No. 17-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018).

III.   **Analysis**

At the detention hearing held on July 17, 2024, after finding that Defendant had rebutted the presumption of detention, Judge Pesto concluded that Defendant is a danger to the community, but not a risk of flight. However, he further determined that the risk to the community "may be negated, depending on what treatment options are available" [Govt. Ex. 1]. Accordingly, he ordered Defendant to be detained pending completion of a drug treatment evaluation [Doc. 74]. Upon notification that a bed was available at an inpatient treatment center, Judge Pesto held a telephone conference to advise the parties that he was going to release Defendant to treatment. He followed with a written order finding that release to the inpatient treatment program "is adequate to ensure the safety of the community." [Doc. 83].

Upon de novo review of the expanded record, to include the transcripts of the detention hearing and the status conference held before Judge Pesto, the Pretrial Services Report, and the additional testimony and evidence adduced at the hearing held before this Court on August 26, 2024, this Court entered an order reversing and vacating the release order issued by Judge Pesto, and found that Defendant should be detained pending trial [Doc. 95].

As an initial matter, and as noted on the record at the hearing on August 26, this Court does not concur with Judge Pesto's conclusion that the presumption of dangerousness has been rebutted in this case.[1] In any event, even assuming that the evidence that Defendant presented at

---

[1]   Although a defendant's burden of production is "relatively light," in order to rebut the presumption of dangerousness a defendant charged with a serious narcotics felony nevertheless "must come forward with some credible evidence that he will not continue to engage in the drug activities with which he has been charged." *Chagra*, 850 F. Supp. at 357-58; *see also United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *5 (M.D. Pa. Apr. 23, 2009). Here, as will be discussed further herein, upon Defendant's arrest on the current offenses, she was found to be in possession of six

6

the initial detention hearing was sufficient to rebut that presumption, this Court nonetheless is satisfied that the Government has established by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of the community should Defendant be released pending trial.[2]

In reaching its decision, this Court has considered and weighed the relevant factors set forth in 18 U.S.C. § 3142(g) concerning: (1) the nature and circumstances of the offense charged, including, *inter alia*, whether the offense involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including, *inter alia*, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

As to the first factor, Defendant has been charged with two extremely serious offenses involving the distribution of fentanyl, a Schedule II controlled substance, with the charge at Count One alleging that Defendant's distribution of fentanyl resulted in the death of Katelin Wagner. If convicted at this count, Defendant would be facing a <u>minimum</u> sentence of not less than twenty years in prison, with a maximum possible sentence of life imprisonment. In addition, a conviction at Count Two would carry a sentence of up to 20 years' imprisonment, assuming no final prior felony drug conviction. Accordingly, the nature and circumstances of the charged controlled substances offenses weigh heavily against Defendant's release.

---

stamp bags of controlled substances, each of which tested positive for fentanyl and heroin, with, *inter alia*, Xylazine also identified in the analysis [Govt. Ex. 3]. In the eyes of this Court, Defendant has not presented evidence to show that her criminality is a thing of the past.

[2] This Court agrees with Judge Pesto that there is insufficient evidence in the record to establish by a preponderance of the evidence that Defendant would pose a flight risk if released.

As to the second factor, although Defendant of course must be presumed innocent of the charged offenses, as a general matter the grand jury's very return of the superseding indictment establishes probable cause that the offenses occurred and that Defendant committed them, in and of itself suggesting that the weight of the evidence against Defendant is sufficiently strong enough at least to support that probable cause determination. Thus, while recognizing that Defendant is presumed innocent of the charged offenses, the weight of the evidence against her on those charges likewise favors pretrial detention.

With respect to Defendant's history and characteristics, the Court observes that Defendant is 43 years old. She reported to Pretrial Services that she is divorced and has one son. At the time of her arrest, she was living with her son and his girlfriend. She has been unemployed since 2021. As to her mental condition, this Court notes that Defendant has been diagnosed with both mood and anxiety disorders, including bi-polar disorder, depression and anxiety.

Of primary significance to this Court's analysis, Defendant is an admitted current heroin addict with a previous substance abuse history involving prescription opiates. She has been abusing drugs for close to a decade. Indeed, Defendant reported to Pretrial Services that she was using heroin daily until her arrest. Recognizing her addiction, Judge Pesto determined that Defendant's danger to the community "may be negated" by placing her in an inpatient substance abuse treatment program. However, this Court notes that in the three years between Wagner's death and Defendant's arrest, she made little effort to seek treatment. Defendant's sister, testifying at the initial detention hearing, indicated that Defendant did attempt treatment once during that period, but she only stayed for "a week" [Govt. Ex. 1 p.10]. No further attempts were made, either by Defendant or her family, to address Defendant's addiction until her arrest. Accordingly, this Court believes that Defendant's history and circumstances also weigh against pretrial release.

Finally, as to the fourth factor, this Court believes that the nature and seriousness of the danger to the community that would be posed by Defendant's release significantly favors pretrial detention in this case. As many courts have recognized, drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of a dangerous, addictive drug such as fentanyl. *See Bastianelli*, 2020 WL 1015269, at *8 ("Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs [ ]."); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("[V]iolence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs.").

Here, Defendant is charged with distributing fentanyl in February 2021 resulting in Wagner's death. The fentanyl that killed Wagner contained Xylazine. Three years later, when arrested for the charged offenses, Defendant was found to be in possession of six stamp bags of heroin and fentanyl, and an analysis of those substances again identified Xylazine in the samples [Govt. Ex. 3]. Thus, despite knowing that she was under investigation for selling fentanyl resulting in death, Defendant nevertheless continued to obtain, possess, and use fentanyl and heroin on a daily basis, without knowing precisely what the substances she was using contained. Nor does this Court agree that Defendant's danger to the community would be negated merely by placing her in an inpatient drug treatment program.[3] The death of Katelin Wagner clearly did not deter Defendant's illicit conduct, and she made only a single unsuccessful effort to address her substance abuse problem in the intervening three years. This Court cannot discern a scenario more dangerous to the community. Therefore, this final factor also considerably weighs in favor of detention.

---

[3] This Court does, however, recognize Defendant's serious need for substance abuse treatment, and strongly encourages her to take full advantage of any and all treatment options that may be available to her during her incarceration.

9

In making a release determination, this Court is required to balance <u>all</u> of the factors set forth in § 3142(g). In addition, as already noted, this is a presumption case. Thus, even if this Court assumes for the sake of argument that Defendant has rebutted that presumption, it does not disappear entirely, but rather "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Chagra*, 850 F. Supp. at 358 (citation omitted). Upon consideration of the presumption of dangerousness, in addition to all four § 3142(g) factors, this Court is convinced that Defendant's detention pending trial is warranted.

## IV. Conclusion

Upon de novo review of the record, and based upon its own independent determination in accordance with the relevant factors set forth in § 3142(g) of the Bail Reform Act, this Court has found by clear and convincing evidence, for the reasons stated herein, that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released pending trial. Accordingly, the Government's appeal from and motion to revoke Judge Pesto's release order has been granted, and Defendant has been ordered detained pending trial pursuant to 18 U.S.C. §§ 3142(a)(4) and 3142(e).

Stephanie L. Haines
United States District Judge

cc/ecf: All counsel of record