**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:22-17-2 |
| | ) | Judge Stephanie L. Haines |
| MANDI LITZINGER | ) | |

## OPINION

On July 9, 2024, a Federal Grand Jury returned a Superseding Indictment charging Defendant Mandi Litzinger ("Ms. Litzinger") with two offenses. (ECF Nos. 52, 53). Ms. Litzinger's trial is scheduled to begin on July 13, 2026. (ECF No. 148).

Currently pending before the Court are the following two motions in limine, both of which were filed by the United States of America (the "Government"): (1) the "Government's Motion in Limine to Admit Text Messages Between [Ms. Litzinger] and Her Associate Steven" (ECF No. 174) and (2) the "Government's Motion in Limine to Regarding Admission of Relevant Graphic Evidence that is Material to Prove the Charged Offenses[.]" (ECF No. 175). As of the date of this Opinion, Ms. Litzinger has not filed any motions in limine of her own.

Mr. Litzinger's deadline for opposing the Government's Motions was June 29, 2026. (ECF No. 148 at 2). As of the date of this Opinion, Ms. Litzinger has filed a Response in Opposition to the Government's Motion at ECF No. 174, (ECF No. 180), but she has not opposed the Government's Motion at ECF No. 175.

For the following reasons, the Court GRANTS IN PART and DENIES IN PART the Government's Motion at ECF No. 174. As the Court explains in greater detail below, the Government may introduce portions of the text messages between Ms. Litzinger and Steven on February 25, 2021, and February 26, 2021, at trial, but it may not admit the entirety of either

conversation. The parties shall also meet and confer regarding the reference to Ms. Litzinger's outstanding warrant and provide the Court with an agreed-upon redacted version of the text messages from February 25, 2021, on or before July 7, 2026. Finally, the Court GRANTS AS UNOPPOSED the Government's Motion at ECF No. 175. The Court preliminarily admits the evidence referenced therein at the upcoming trial, subject to further objection by Ms. Litzinger during trial.

## I. Background

At Count One ("Count I") of the Superseding Indictment, the Grand Jury charged both Ms. Litzinger and her co-defendant, James Gill ("Mr. Gill"), with distribution of a quantity of a mixture and substance containing a detectable amount of fentanyl, resulting in serious bodily injury and death, on or about February 12, 2021, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2. (ECF No. 52 at 1; ECF No. 53 at 1). At Count Two ("Count II"), the Grand Jury charged Ms. Litzinger alone with conspiracy to distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of fentanyl, in and around February 2021, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and in violation of Title 21, United States Code, Section 846. (ECF No. 52 at 2; ECF No. 53 at 1).

On March 26, 2026, Mr. Gill pleaded guilty to the offense at Count I of the Superseding Indictment. (ECF No. 145). Based on the Government's proffer during Mr. Gill's change of plea hearing and its representations in other filings, it is the understanding of the Court that the Government has evidence tending to indicate[1] Ms. Litzinger obtained stamp bags marked "Oreo"

---

[1] The Court is in no way commenting on the strength of the Government's evidence or the guilt or innocence of Ms. Litzinger relative to the charges against her. Those will be matters for the jury at the upcoming trial. The Court is only recounting the Government's arguments here because they provide relevant background for the evidence the Government seeks to admit via its motions in limine.

and containing fentanyl and zylazine from a supplier in Indiana, Pennsylvania in February 2021. (ECF No. 174 at 1). Ms. Litzinger and William Roland ("Mr. Roland"), who is now deceased, then conveyed a portion of those stamp bags to Mr. Gill in February 2021. Upon receipt of the stamp bags, Mr. Gill delivered the drugs to the victim of the offense at Count I, who died after taking them. Critically, after the victim was found dead on February 13, 2021, law enforcement discovered ten stamp bags marked "Oreo" in her bedroom in close proximity to use paraphernalia.

At Count II, the Government contends that Ms. Litzinger and Mr. Roland conspired throughout February 2021 to distribute and possess with intent to distribute fentanyl to various other customers. In this vein, the Government asserts that, on February 24, 2021, Ms. Litzinger "was arrested [on an unrelated traffic stop] with multiple stamp bags containing fentanyl and xylazine marked 'Black Panther.'" (ECF No. 174 at 2).

The Government filed its Motions at ECF Nos. 174 and 175 on June 22, 2026. Ms. Litzinger filed her Response in Opposition on June 25, 2026. (ECF No. 180).

## II. Discussion

### A.    The Court Grants in Part and Denies in Part the Government's Motion at ECF No. 174

#### 1. The Parties' Arguments

In the Government's Motion at ECF No. 174, it seeks to admit two series of text messages between Ms. Litzinger and her associate, Steven.

The first series of messages, sent on February 25, 2021, read as follows:

**Litzinger:**    So I just got released from jail

**Steven:**    What!?!? No f***ing way?

**Steven:**    *!

| | |
|---|---|
| **Litzinger:** | Dead serious standing in front of Armstrong county jail released right now they cuffed and stuffed me last night |
| **Steven:** | Holy f**k dude. What did they attest [sic] you for? Was it right after I saw ur dude or something |
| **Litzinger:** | I had a warrant out apparently from 2019 I didn't know about |
| **Steven:** | So u didn't get any new charges or what |
| **Litzinger:** | I'm out on bail till my hearing March 9th and I got new charges so I'll have another hearing |
| **Steven:** | What r the new charges. Did they catch u with s**t. |
| **Litzinger:** | Of course they did … I also found out what bags [Victim] over dosed on |
| **Steven:** | Which ones |
| **Litzinger:** | Oreo bags |
| **Steven:** | I wasn't the biggest fan of those ones. But these black panther ones holy f**k. I was rocked and pretty sure he could tell |
| **Litzinger:** | Yeah I'm out and sick |
| **Steven:** | So they got u right after u saw dude and spent all ur money and then took all ur s**t on top of it |
| **Steven:** | I'm sorry hun. That's soooo f**ked up. Honestly can't imagine worse timing. |
| **Litzinger:** | No they got me right before I was to see dude … maybe it's a sign to just stay clean |
| **Steven:** | Yeah maybe. That's just so crazy. I can't believe that happened to you. Nobody can catch a f***ing break in this life |

(ECF No. 174 at 2–3).

The second series of messages, sent on February 26, 2021, read as follows:

| | |
|---|---|
| **Steven:** | … So r u just planning on quitting or f**k it lol |
| **Litzinger:** | That's all your [sic] worried about is if I'm done selling s**t |

4

| | |
|---|---|
| **Steven:** | No? I asked if u were quitting. You said yesterday u were considering it. I didn't know if u were sick right now or not. Was gonna remind u I can give u some subs if u need them |
| **Steven:** | Guessing u don't need any then? |
| **Litzinger:** | No I'm good |

***

| | |
|---|---|
| **Steven:** | So don't get mad but r u still selling? Just wanted to know cause ur my only connect and I still have tax money |
| **Steven:** | So r u? And is there any chance u would meet tonight or in the morning if |
| **Steven:** | Not gonna tell me? |
| **Steven:** | Have a good night I guess |

(ECF No. 174 at 3).

In its Motion, the Government argues that one of the critical issues in this case is "whether [Ms.] Litzinger sold fentanyl in and around February 2021, including the 'Oreo' stamp bags used by the Victim on February 12, 2025, and the 'Black Panther' stamp bags possessed by [Ms.] Litzinger on February 24, 202[1]." (*Id.* at 4). Insofar as these texts make it more likely that she engaged in that conduct, the Government asserts that the messages are relevant. (*Id.* at 4–5). Further, the Government contends that Ms. Litzinger's statements are admissible at trial as opposing party statements, and the statements made by Steven are admissible to show the effect on Ms. Litzinger and provide context for Ms. Litzinger's statements. (*Id.* at 5).

In her Brief in Opposition, Ms. Litzinger argues that the text messages are only connected to the offense at Count I in a single way—the mention of "Oreo bags" relative to the victim's death. (ECF No. 180 at 2). However, Ms. Litzinger contends that her knowledge of *how* the victim died does not mean that she had any *involvement* in *distributing* the drugs to the victim. (*Id.*). With

5

respect to Count II, Ms. Litzinger asserts that "Steven's purchases do not make the charged February 2021 conspiracy any more likely. They only show that Ms. Litzinger sold drugs, which is [] character evidence, and not proof of the agreement the [G]rand [J]ury charged." (*Id.* at 3–4). In light of the foregoing, Ms. Litzinger argues that the text messages are Rule 404(b) evidence, but "the [G]overnment's [M]otion never identifies a permissible Rule 404(b) purpose at all." (*Id.* at 4). Finally, Ms. Litzinger contends that Steven's statements are inadmissible hearsay because his "messages do the [G]overnment no good unless the jury believes them." (*Id.* at 6–7).

## 2. Relevant Legal Principles

The following legal principles all bear on the Court's resolution of the Government's Motion at ECF No. 174: (1) Federal Rules of Evidence 401 and 402, (2) Federal Rule of Evidence 403, (3) Federal Rule of Evidence 404(b) and the types of evidence that do not fall within its ambit, and (4) rules regarding hearsay. The Court will now address each of those principles in turn.

Turning first to Federal Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Rule 402, relevant evidence is admissible unless: "(1) the United States Constitution; (2) a federal statute; (3) [the Federal Rules of Evidence]; or (4) other rules prescribed by the Supreme Court" provide otherwise. Fed. R. Evid. 402. And "[i]rrelevant evidence is not admissible." *Id.*

Turning next to Rule 403, that provision dictates that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As the Third Circuit has explained:

> Rule 403 creates a presumption of admissibility. *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002). When weighing the Rule 403 factors, courts "must appraise

the genuine need for the challenged evidence and balance that necessity against the risk of prejudice to the defendant." *Gov't of Virgin Islands v. Archibald*, 987 F.2d 180, 186 (3d Cir. 1993) (internal quotation marks omitted). Evidence should not be excluded under Rule 403 "merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value ... [W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *Cross*, 308 F.3d at 323 (quoting Fed. R. Evid. 403).

*United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014).

Turning next to Rule 404(b), that Rule provides that evidence "of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Still, under Rule 404(b)(2), this "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." As the Third Circuit has explained:

Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has "the burden of demonstrating [the evidence's] applicability." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). Admissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction.

*United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) (cleaned up).

However, "'[i]ntrinsic evidence need not be analyzed under Rule 404(b) because it is not '[e]vidence of any crime, wrong, or other act,' FED. R. EVID. 404(b)(1), but rather part and parcel of the charged offense.'" *United States v. Evans*, 571 F. Supp. 3d 368, 372 (M.D. Pa. 2021) (quoting *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020)) (cleaned up). Critically, the Third Circuit has "limited the intrinsic label to two narrow categories of evidence: (1) where the uncharged conduct directly proves the charged offense; and (2) where it is performed

contemporaneously with the charged crime and facilitates the commission of the charged crime." *Williams*, 974 F.3d at 357 (cleaned up). This fact "suggests that the nature and scope of the evidence able to be deemed intrinsic will vary with the charged offense." *Id.* ("In particular, when a criminal conspiracy is charged, courts have afforded the prosecution considerable leeway to present evidence, even of unalleged acts within the indictment period, that reflects a conspiratorial agreement or furtherance of the conspiracy's illegal objectives."); *see also United States v. Bush*, 741 F. App'x 110, 122–23 (3d Cir. 2018) (affirming District Court's admission of evidence seized from defendant's house and store during defendant's arrest in February of 2013 where: (1) the conspiracy of which defendant was a part may have ended in 2012, (2) other evidence showed that co-conspirator ordered distinctive stamp bags from defendant in February 2012 but was unable to retrieve those bag before co-conspirator's arrest, and (3) some of the stamp bags seized from defendant's store in February 2013 had the same distinctive markings as the ones co-defendant had ordered, all because the Third Circuit found that this evidence "was relevant to directly proving [defendant's] involvement in the charged conspiracy" and therefore did not fall within the ambit of Rule 404(b)).

Turning finally to hearsay, pursuant to "Federal Rule of Evidence 802, hearsay evidence is generally inadmissible at trial." *Black Bear Energy Services, Inc. v. Youngstown Pipe & Steel, LLC*, 551 F. Supp. 3d 555, 562 (W.D. Pa. 2021) (citing FED. R. EVID. 802). Hearsay "is defined as a statement that 'the declarant does not make while testifying at the current trial or hearing … and … [is] offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *Id.* (quoting FED. R. EVID. 801(c)(1)-(2)). However, an "opposing party's statement offered for the truth of the matter asserted is not considered hearsay in certain circumstances[.]" *Id.* Relevant here, a statement

is not hearsay if it is "offered against an opposing party and (A) was made by the party in an individual or representative capacity[.]" FED. R. EVID. 801(d)(2)(A).

Also particularly relevant here, the Third Circuit has affirmed the admission of a third-party's text messages as nonhearsay context for text messages that a defendant sends, where the third-party's messages are not offered to prove the truth of the matter asserted. *United States v. Bereznak*, 860 F. App'x 805, 809 (3d Cir. 2021). But courts must be careful in this context—they must avoid allowing the Government to offer "accounts of bad acts by the defendant that the jury would not [have] otherwise [] heard" under "the guise of 'background explanation[.]'" *United States v. Price*, 458 F.3d 202, 210 (3d Cir. 2006) (noting also that its prior precedent "did not hold that it could never be the case that a background explanation might, in order to serve its legitimate background evidentiary function, require inclusion of prejudicial details").

### 3. Discussion

Because resolution of the issues of relevancy, Rule 403 balancing, and the application of Rule 404(b) all require the Court to assess the text messages in the Government's Motion at ECF No. 174 within the context of the charges against Ms. Litzinger, the Court now turns its attention to the elements of the offenses at Counts I and II.

As the parties recognize, in order for a jury to find Ms. Litzinger guilty of the offense at Count I, it must find that the Government proved each of the following four elements beyond a reasonable doubt: (1) that Ms. Litzinger "distributed a mixture or substance containing a controlled substance;" (2) that Ms. Litzinger "distributed the controlled substance knowingly or intentionally;" (3) that the "controlled substance was fentanyl;" and (4) that the "fentanyl resulted in the serious bodily injury or death of K.W." (ECF No. 183 at 68) (citing THIRD CIRCUIT MODEL CRIMINAL JURY INSTRUCTION § 6.21.841B); *United States v. Peterson*, 622 F.3d 196, 208 (3d Cir.

2010) ("We have a hard time concluding that the use of our own model jury instruction can constitute error[.]").

In order for a jury to find Ms. Litzinger guilty of the offense at Count II, it must find that the Government proved each of the following three elements beyond a reasonable doubt: (1) that "two or more persons agreed to distribute and possess with the intent to distribute a controlled substance, namely, fentanyl, a Schedule II controlled substance, pursuant to 21 U.S.C. §§ 812(c), Schedule II (b)[;]" (2) that Ms. Litzinger "was a party to or member of that agreement;" and (3) that Ms. Litzinger "joined the agreement or conspiracy knowing of its objective(s) to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve those objective(s);" that is, that Ms. Litzinger "and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objective(s)." (ECF No. 183 at 76) (citing THIRD CIRCUIT MODEL CRIMINAL JURY INSTRUCTION § 6.21.846B); *Peterson*, 622 F.3d at 208.

### a. The Text Messages from February 25, 2021

With those elements in place, the Court first assesses the admissibility of the texting conversation between Ms. Litzinger and Steven on February 25, 2021, which followed Ms. Litzinger's arrest on February 24, 2021. Therein, Ms. Litzinger makes several statements that are highly relevant in this case and tend to directly prove the offense at Count I. For example, after Steven asks Ms. Litzinger if she was caught "with s\*\*t", a clear reference to drugs, Ms. Litzinger responds that she was in fact caught with drugs, and she "also found out what bags [Victim] over dosed on[.]" *See supra* Section II.A.1. Immediately thereafter, Steven asks "[w]hich ones[?]" to which Ms. Litzinger responds, "Oreo bags[.]" *See id.* This series of texts by Ms. Litzinger is critical—these texts would clearly allow a jury to find that Ms. Litzinger connected, in her own

mind and in her statements to Steven, the fentanyl she possessed when she was arrested on February 24, 2021, and the fentanyl on which the victim of the offense at Count I overdosed.

Ms. Litzinger argues against the admission of these messages because she stresses that knowledge about how the victim died does not equal playing a role in the victim's death. Taken in isolation, there is truth to Ms. Litzinger's statement. But this series of text messages need not, by itself, prove Ms. Litzinger guilty of the offense at Count I in order to be admissible. Even more critically, this series of text messages does not simply evidence *knowledge* by Ms. Litzinger about how the victim died. Rather, as the Court explained above, it evidences Ms. Litzinger making a connection between the *fentanyl she possessed on February 24, 2021,* and the fentanyl *on which the victim of the offense at Count I overdosed.* Therefore, the Court finds that this evidence is extremely relevant to the issue of whether Ms. Litzinger knowingly or intentionally distributed a mixture or substance containing a detectable amount of fentanyl that resulted in the serious bodily injury or death of K.W., meaning that this evidence is admissible under Rule 401.

And this finding leads the Court to several others. First, given this evidence's very high probative value, any risk of unfair prejudice does not substantially outweigh that probative value, making it admissible under Rule 403. Second, because this evidence directly proves the charged offense at Count I, it is admissible as intrinsic evidence and is not subject to Rule 404(b). *Bush,* 741 F. App'x at 122–23. Finally, because the Government seeks to offer these texts as against Ms. Litzinger, they clearly satisfy Federal Rule of Evidence 801(d)(2)(A). And because Steven's texts from February 25, 2021, provide context for Ms. Litzinger's texts, they are admissible for that nonhearsay purpose as well. *Bereznak,* 860 F. App'x 809; *Price,* 458 F.3d at 211 (affirming the admission of background evidence that was otherwise available at trial and provided important

context).[2] In sum, based on these findings, the majority of the text messages between Ms. Litzinger and Steven on February 25, 2021, are admissible.[3]

However, as the Government points out, Ms. Litzinger's reference to her outstanding warrant is likely inadmissible in its case-in-chief. (ECF No. 174 at 2 n.1). The Court concurs with this assessment and will require the Government and Ms. Litzinger to confer and provide the Court with a redacted version of the February 25, 2021, text messages between Ms. Litzinger and Steven on or before July 7, 2026. If either party has remaining objections to that day's conversation, that party shall lodge any such objection(s) with the Court on or before July 8, 2026.[4]

### b.    The Text Messages from February 26, 2021

Turning to the text messages between Ms. Litzinger and Steven on February 26, 2021, the Court begins by holding that the messages from Steven below the asterisks are inadmissible hearsay. *See supra* Section II.A.1. Indeed, the Court cannot find that these messages by Steven provide context for Ms. Litzinger's messages because Ms. Litzinger was not saying anything at the time Steven was sending them. Therefore, it appears to the Court that their lone relevance is to

---

[2] The Court observes that all of Steven's critical statements in the February 25, 2021, messages are either duplicated by Ms. Litzinger herself in those messages or are available for the Government to present during trial via other means. Further, Steven's statements are important context for Ms. Litzinger's messages.

[3] The Court also observes that the portions of the February 25, 2021, conversation that the Court has emphasized above are not the only portions of that conversation for which the Court reaches these conclusions. For example, Ms. Litzinger's statement about law enforcement "g[etting her] right before [she] was to see dude" appears highly relevant, survives Rule 403 balancing, is potentially direct evidence at *both* Counts I and II, and constitutes an opposing party statement under Rule 801(d)(2)(A).

[4] The Court is presently admitting the entirety of the text messages between Ms. Litzinger and Steven on February 25, 2021, with the exception of the reference to Ms. Litzinger's outstanding warrant. In doing so, the Court observes that the simple fact of Ms. Litzinger's arrest on February 24, 2021, during a traffic stop is likely subject to Rule 404(b). However, the fact that Ms. Litzinger possessed fentanyl at the time of her arrest is highly relevant to the offense at Count II, almost certainly constitutes direct evidence at that Count, and may not be capable of being parsed out of the messages between Ms. Litzinger and Steven on February 25, 2021. Given all of the foregoing, the Court simply takes the following steps today: (1) deems the messages on February 25, 2021, admissible in full (2) with the exception of the reference to the outstanding warrant, (3) directs the parties to agree upon a redacted version of the messages from February 25, 2021, and submit that version to the Court by July 7, 2026, and (4) affords both parties until July 8, 2026, to make any further objections regarding how much information is redacted from the February 25, 2021, messages.

12

show Ms. Litzinger was "selling" and was Steven's "only connect" for drugs, which are clearly statements offered to show that Ms. Litzinger was a drug dealer (i.e., for the truth of the matter asserted), making them hearsay. FED. R. EVID. 801(c). Accordingly, because Steven's statements below the asterisks are hearsay without any apparent path to admissibility, they are inadmissible at trial. FED. R. EVID. 802.

However, the outcome is different relative to the messages from February 26, 2021, above the asterisk. There, Ms. Litzinger herself makes reference to whether she is "done selling s**t[,]" again a clear reference to drugs. *See supra* Section II.A.1. The fact that Ms. Litzinger had a conversation with Steven on February 26, 2021, about her selling drugs, coupled with Ms. Litzinger's statement on February 25, 2021, about: (1) her possessing drugs at the time of her arrest and (2) the drugs on which the victim of the offense at Count I overdosed tend to show that Ms. Litzinger was engaged in significant distribution of fentanyl in and around the end of February 2021.

Once again, Ms. Litzinger attempts to avoid the admission of these messages by arguing that they simply constitute a customer talking to a dealer, not proof of a conspiracy, which is the charged offense at Count II. (ECF No. 180 at 4). To be sure, if Ms. Litzinger only sold drugs to a buyer, that would not be sufficient evidence to convict her at Count II. *United States v. Sanchez*, 704 F. App'x 38, 40 (3d Cir. 2017) ("A buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy.") (cleaned up). But the desideratum of a conspiracy to distribute and possess with the intent to distribute controlled substances is a market within which to sell those controlled substances. And it is the Court's understanding that the Government seeks to admit evidence of Ms. Litzinger's dealing of drugs to Steven in order to show

that Ms. Litzinger and Mr. Roland (and perhaps others) conspired throughout February 2021 to distribute and possess with intent to distribute fentanyl to various customers other than the victim of the offense at Count I.

With that understanding in view, the Court holds that this evidence is highly relevant to the offense at Count II. Indeed, the fact that Ms. Litzinger was distributing or potentially distributing drugs to Steven in February 2021 does go to proving that she agreed with at least one other person to distribute and possess with the intent to distribute a controlled substance, namely, fentanyl during that timeframe. *Cf. United States v. Fausnaught*, 380 F. App'x 198, 202 (3d Cir. 2010) ("The record at trial included substantial evidence of activities by members of the conspiracy that were necessary to further its overall purpose of making money through the sale of drugs. This included … the transportation of drugs; the supply, distribution and sale of the drugs …"). Therefore, the Court holds that the portion of the text messages above the asterisks is admissible under Federal Rule of Evidence 401.

Once again, this finding leads the Court to several others. First, given this evidence's very high probative value, any risk of unfair prejudice does not substantially outweigh that probative value, making these messages admissible under Rule 403. Second, because this evidence directly proves the charged offense at Count I, it is admissible as intrinsic evidence and is not subject to Rule 404(b). *Bush*, 741 F. App'x at 122–23. Finally, because the Government seeks to offer these texts as against Ms. Litzinger, they clearly satisfy Federal Rule of Evidence 801(d)(2)(A). And because Steven's texts from February 25, 2021, provide context for Ms. Litzinger's texts, they are admissible for that nonhearsay purpose as well. *Bereznak*, 860 F. App'x 809. In sum, based on these findings, the first portion of the text messages (i.e., the messages above the asterisks) between Ms. Litzinger and Steven on February 26, 2021, are admissible.

**B. The Court Grants the Government's Motion at ECF No. 175 as Unopposed**

In the Government's Motion at ECF No. 175, it seeks "to admit a limited number of highly relevant and necessary crime scene and autopsy images." (*Id.* at 4). The Government argues that these images "of the deceased victim are extremely probative as to the question of whether this death occurred as a result of a drug overdose, as opposed to some other cause." (*Id.*).

The Court has reviewed the five images that the Government seeks to admit via its Motion at ECF No. 175. (ECF No. 179). Three of those images, Government's Exhibits 22e, 22f, and 22g, appear to depict the victim at the scene of her death. One image, Government's Exhibit 39a, appears to depict the victim at the coroner's/medical examiner's office. And one image, Government's Exhibit 39b, appears to be a photograph of the victim's arm.

As the Court explained earlier, *see supra* Section II.A.2, under Federal Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Rule 402, relevant evidence is admissible unless: "(1) the United States Constitution; (2) a federal statute; (3) [the Federal Rules of Evidence]; or (4) other rules prescribed by the Supreme Court" provide otherwise. Fed. R. Evid. 402. And "[i]rrelevant evidence is not admissible." *Id.* Finally, Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, the Court finds that all five photographs are highly relevant because they do tend to show that the victim of the offense at Count I died of a drug overdose as opposed to some other means, which goes directly to proving that offense. *See United States v. Bowers*, No. 18-CR-292, 2023 WL 3688250, at *2 (W.D. Pa. May 26, 2023) ("[C]ourts have routinely admitted this kind of

evidence finding that crime scene images are generally admissible under Rules 401 and 403."). Further, as the Government points out, the autopsy photographs will "corroborate and explain" the testimony of the clinical pathologist whom the Government intends to offer at trial. (ECF No. 175 at 8); *see also United States v. Escalante-Melgar*, 567 F. Supp. 3d 485, 493 (D.N.J. 2021) (deeming autopsy photographs highly relevant and probative because they were "needed to 'facilitate the jury's understanding' of the technical testimony to be offered by the Government's medical examiner and ballistics expert"). Finally, especially in the absence of any argument to the contrary by Ms. Litzinger, the Court finds that the five images' high probative value is certainly not substantially outweighed by the risk of unfair prejudice. *United States v. Lopez*, 271 F.3d 472, 482 (3d Cir. 2001) (agreeing with the district court that the photographs the defendants argued were graphic survived Rule 403 balancing where those photographs went directly to an element of the charge against defendants); *see also United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) ("Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.") (internal quotation marks and citation omitted). The Court's finding on this score is bolstered by the fact that the Court intends to give the jury an appropriate instruction regarding the appropriate way in which it should approach these photographs. (ECF No. 183 at 18). Therefore, the Court will permit the Government to admit these five photographs at trial.

In sum, the Court grants the Government's Motion at ECF No. 175. Subject to further objection at trial, the Court preliminarily admits the evidence articulated by the Government in its filing at ECF No. 175. *United States v. Santos*, No. 18-CR-585, 2022 WL 1698171, at *7 (D.N.J. Mar. 22, 2022).

16

An appropriate Order will be entered.

Dated: July 2, 2026

_____
Stephanie L. Haines
United States District Court Judge